IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEVIN D. WESSLING, ) | |
| ) | |
| Petitioner, ) | 4:04cv3375 |
| ) | |
| vs. ) | MEMORANDUM AND ORDER |
| ) | |
| MICHAEL KENNEY, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court for decision on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 petition") filed by the petitioner, Kevin D. Wessling. The petitioner alleges violations of his constitutional rights in connection with his conviction and sentence in the District Court of Jefferson County, Nebraska, on or about March 13, 2002, after a jury trial on charges of theft of property valued at more than $1,500. In his § 2254 petition, the petitioner asserts the following claims:

**Claim No. 1:**   Ineffective assistance of trial counsel during plea negotiations.

**Claim No. 2:**   Ineffective assistance of trial counsel during sentencing.

The respondent acknowledges that the § 2254 petition is timely. The respondent also asserts no affirmative defense to the petitioner's first claim, and it now appears that the respondent has abandoned his previously asserted defense of procedural default as to the petitioner's second claim (see Filing No. 28, respondent's Reply Brief, at 6-7). However, the respondent denies that either claim has merit whether reviewed under the deferential standard of review required by 28 U.S.C. § 2254(d), when a § 2254 claim has been considered on the merits by the state appellate courts, or under the de novo standard of review applied when this court reaches a federal constitutional claim which the state

courts have not adjudicated on the merits, see Pfau v. Ault, 409 F.3d 933, 938-39 (8th Cir. 2005).[1]  See also 28 U.S.C. § 2254(b)(2).[2]

### Claim No. 1

Mr. Wessling asserts that on December 20, 2001, the prosecutor charged him with Count I (theft by receiving stolen property) and Count II (an habitual criminal charge). From that date until the trial three and one-half months later, the petitioner's trial counsel failed to investigate or challenge the habitual criminal count.  The prosecutor offered a plea bargain involving dismissal of the habitual criminal count and a plea of guilty to Count I. The petitioner's trial counsel advised him to accept that bargain, without determining whether the petitioner was even eligible to be charged as an habitual criminal.  Ultimately, the petitioner declined to accept the plea bargain and proceeded to trial.

---

[1] See also Brown v. Luebbers, 371 F.3d 458, 460-61 (8th Cir. 2004) (*en banc*): "[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court .... So the first question for us to consider is:  what constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment - an adjudication - on a substantive issue - the merits (as compared with a procedural or technical point).  A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear - no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised .... We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court."

[2] 28 U.S.C. § 2254(b)(2) states: "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

After the jury found the petitioner guilty of the theft charge, and before the court considered the habitual criminal charge at sentencing, the prosecutor dismissed the habitual criminal charge. According to the petitioner, if his attorney had researched the habitual criminal laws and investigated the petitioner's actual eligibility to be charged as an habitual criminal, counsel would have learned that Count II had no basis in law or fact. Armed with that knowledge during the plea bargaining stage, the petitioner's attorney could have engaged in real and meaningful plea negotiations, and the petitioner could have secured an actual (as opposed to illusory) plea offer.[3] The petitioner argues that he advised his attorney during the plea bargaining period that he was willing to plead guilty to an attempted theft offense which would have carried a sentencing range of 0 to 5 years, instead of the 1 to 20-year sentencing range for the offense charged in Count I.

Mr. Wessling cites <u>Wanatee v. Ault</u>, 39 F. Supp.2d 1164 (N.D.Iowa,1999), in which the prosecution offered a favorable plea bargain, and the petitioner's trial counsel failed to advise the petitioner of the relevant law. When the petitioner did not accept the bargain and received a much higher sentence after trial, the federal habeas court found that the petitioner's trial attorney had rendered ineffective assistance of counsel during the plea bargaining process by neglecting to advise the petitioner about the implications of the felony-murder rule, aiding and abetting liability, and liability for joint criminal conduct. Consequently, the court ordered an evidentiary hearing on the issue of prejudice.

---

[3]Although he does not raise the argument as a separate claim, the petitioner protests the prosecution's stratagem of adding a groundless habitual criminal charge and then, as the alleged "plea bargain," offering to dismiss the invalid enhancement as an inducement to obtain a guilty plea to the other charged count(s). At a minimum, the petitioner faults his trial counsel for allowing the prosecutor to use that ploy.

When the case reached the Eighth Circuit Court of Appeals, the appellate court ruled in Wanatee v. Ault, 259 F.3d 700, 703 (8th Cir. 2001), *affirming* Wanatee v. Ault, 39 F. Supp.2d 1164 (N.D. Iowa 1999), and Wanatee v. Ault, 101 F. Supp.2d 1189 (N.D. Iowa 2000), that a defendant who rejects a plea offer because of improper advice from counsel may show prejudice even if he received a fair trial. To establish prejudice under such circumstances, the petitioner must show that he would have accepted the plea bargain but for counsel's advice, and that had he done so, he would have received a lesser sentence. Wanatee, 259 F.3d at 703-04. See also Hoffman v. Arave, 455 F.3d 926, 942 (9th Cir. 2006) (defense counsel performed deficiently by recommending rejection of a plea bargain that would have removed the death penalty as a sentencing option; such deficiency prejudiced the petitioner who later received a death sentence after trial).

The petitioner also relies on Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), for the standards to be applied to claims of ineffective assistance of counsel in the context of guilty pleas. In the event of defective performance by trial counsel, the petitioner defines the pertinent question to determine prejudice, as: "Whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In his case, the petitioner contends, his attorney's failure to research and investigate the relevant habitual criminal laws and the facts of his case deprived the petitioner of a favorable plea agreement.

The cases cited by Mr. Wessling, however, involve circumstances distinctly different from his own. In the cases cited by the petitioner, the prosecutors had actually offered plea agreements. A plea offer actually extended is a wholly different matter from a plea bargain a petitioner simply believes his attorney could or should have obtained for him. In each

4

case, the issue before the habeas court involved the standards to be applied when the petitioner subsequently challenged the wisdom of the plea decision on collateral review. In Wanatee, for example, the petitioner had rejected the plea offer, and he subsequently protested that his trial counsel should have advised him to accept the offer. In Hill, the petitioner had accepted the plea bargain, but he later regretted his decision, and attributed the bad bargain to the defective advice of counsel.[4]

As the respondent points out, even if the petitioner's trial counsel rendered ineffective assistance during the plea negotiations, the petitioner cannot establish that he suffered any actual prejudice. The petitioner had no entitlement to a plea agreement of any kind. "[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty." Weatherford v. Bursey, 429 U.S. 545, 561 (1977).

In fact, it is pure speculation to suppose that under any circumstances the plea bargain the petitioner wanted would have materialized. As the respondent points out, in

---

[4]The petitioner repeats only the first sentence of the often-quoted standard expressed in Hill. The full quotation assumes a plea agreement in existence and a petitioner who later wishes he had chosen to proceed to trial instead. The remaining text is emphasized below:

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. **In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial**.

Hill v. Lockhart, 474 U.S. 52, 59 (1985) (emphasis added).

5

Mr. Wessling's case, no plea bargain on the terms he wanted was ever offered, and the record belies the petitioner's conjecture that he would have received an offer to plead to an attempt offense with a maximum prison sentence of five years. On the contrary, the prosecutor recommended a sentence of at least ten years at sentencing. (See Filing No. 14, attachment 3, Bill of Exceptions, Case No. CR 01-12, at 94:5-6.)

Even in the remote event that the prosecutor might have offered the petitioner the kind of plea bargain he wanted, it is pure speculation to assume that the court would have approved the bargain. See, e.g., Santobello v. New York, 404 U.S. 257, 262 (1971): "There is, of course, no absolute right to have a guilty plea accepted .... A court may reject a plea in exercise of sound judicial discretion." The kind of hindsight in which the petitioner engages to demonstrate prejudice is too speculative.

Unlike the precedents cited by the petitioner, his own conviction did not result from a plea of guilty that he now regrets, or from rejection of a plea offer that he now wishes he had accepted. It is true that his attorney failed to obtain the plea bargain the petitioner would have liked. However, the prosecutor never had any obligation to offer such an agreement. Therefore, the absence of a desirable plea bargain cannot be traced directly to trial counsel's performance. Instead, the petitioner received a trial, and he does not point to any defect in the trial. Whether reviewed pursuant to 28 U.S.C. §§ 2254(b)(2) or 2254(d), the petitioner's first § 2254 claim fails on the merits.

## Claim No. 2

As his second claim, the petitioner contends that because his attorney failed to review the Presentence Investigation Report ("PSI") with him before the sentencing hearing, the trial judge's sentencing decision may have been tainted by a recommendation

possibly contained in the PSI which may have been based on an erroneous belief by the probation officer who prepared the PSI that the petitioner remained subject to the habitual criminal enhancement. As phrased in his Verified Motion for Postconviction Relief (Filing No. 14, attachment 7, Transcript at 9-11), the petitioner had a due process right to review his PSI to correct any misinformation which might affect the judge's sentencing decision. His counsel's review alone would not have sufficed. Because the prosecutor did not move to dismiss the habitual criminal count until the sentencing hearing, the probation officer who prepared the PSI before the sentencing proceeding probably prepared a sentencing recommendation influenced, in significant part, by the erroneous belief that the petitioner would be sentenced as an habitual criminal. When the trial judge indeed sentenced the petitioner to a prison term of 10 to 16 years, that sentence very likely resulted from the taint of the probation officer's misinformed sentencing recommendation. According to the petitioner, his unduly harsh sentence directly flowed from his attorney's incompetent failure to review the PSI with him prior to sentencing. The petitioner reiterated that reasoning through his postconviction appeal and his § 2254 filings. The claim has not been waived or procedurally defaulted.

However, the petitioner's second claim does not survive scrutiny on the merits. At the outset of the sentencing hearing on May 2, 2002, the prosecutor acknowledged to the court that the State had erroneously charged the petitioner under the habitual criminal statute, and that the State would not be seeking the enhancement. (See Filing No. 14, attachment 3, Bill of Exceptions, Case No. CR 01-12, at 90:24-91:8.) The court approved the prosecutor's withdrawal of the habitual criminal charge. (Id. at 91:9-13.) The petitioner's counsel requested leniency, providing reasons in support of that request. (Id.

at 92:1-93:16.) The prosecutor reiterated three more times that the habitual criminal enhancement did not apply (id. at 93:20-22, 93:24-25, 94:4-5), but noted the petitioner's "significant criminal history" and recommended a prison sentence of "approximately ten years" (id. at 93:25-94:1, 94:5-6).

The judge clearly explained the reasons for his decision to sentence the petitioner to a term of 10 to 16 years of incarceration (id. at 94:8-97:11). He considered the nature of the offense of conviction, in particular the intelligence and planning necessary to carry out the crime. He detailed the petitioner's extensive criminal history dating back to youthful offenses for which the petitioner received minimal punishment, i.e., electronic monitoring, on several occasions, during which the petitioner cut off the electronic monitor, absconded, and tested positive for drugs. The petitioner then graduated to more serious offenses and longer periods of incarceration, during which he lost good-time credit as a result of misconduct reports. The judge commented on the petitioner's failure to take responsibility for his own life.

There is no indication in the record whatsoever to support the petitioner's hypothesis that an erroneous belief by the probation officer who prepared the PSI affected the trial judge's sentencing decision. In addition, as the judge explained (id. at 97:1-11), under the applicable good-time law, the sentence of 10 to 16 years of imprisonment actually amounted to parole eligibility after 5 years and a complete discharge after 8 years, absent loss of good time. On the other hand, an habitual criminal is sentenced to a mandatory minimum term of 10 years' imprisonment. Neb. Rev. Stat. § 29-2221(1). Good time does not reduce mandatory minimum sentences imposed on habitual criminals. Ebert v. Nebraska Dept. of Correctional Services, 656 N.W.2d 634, 639-40 (Neb. App. 2003). See

also Johnson v. Kenney, 654 N.W.2d 191, 195 (Neb. 2002). Thus, the sentence imposed on the petitioner differed considerably from the sentence he would have received as an habitual criminal.

If ineffective assistance of counsel occurred in connection with the PSI at the petitioner's sentencing, the petitioner has not demonstrated prejudice.[5] Whether reviewed pursuant to 28 U.S.C. §§ 2254(b)(2) or 2254(d), the petitioner's second § 2254 claim fails on the merits.

THEREFORE, IT IS ORDERED:

1. That the Petition for Writ of Habeas Corpus filed by Kevin D. Wessling is denied and dismissed with prejudice; and

2. That judgment will be entered accordingly.

Dated this 13th day of March, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[5]See Williams v. Locke, 403 F.3d 1022, 1025 (8th Cir. 2005) ("we need not ask whether [the] lawyer's performance was deficient if we can clearly determine that no prejudice resulted from [the] lawyer's alleged error").

9